**WATTS, Mayor, v. STATE ex rel. SCOTT et al.**

No. 11077—Opinion Filed Feb. 10, 1920.

(Syllabus by the Court.)

**1. Municipal Corporations—City Charter— Conflicting Provisions—General and Special Provisions.**

Where there are two provisions of a city charter, one of which is special and particular and clearly includes the matter in controversy, and where the special provisions covering the subject prescribes different rules and procedure from those in the general provision, it will be held that the special provision applies to the subject-matter and that the general provision does not apply.

**2. Same—Special Bond Election—Procedure —Charter and Statutory Provisions.**

Record examined, and held: (1) That the proceedings for conducting the special election held in the case at bar were governed by the special provisions of the city charter in so far as such provisions purported to regulate such matters, and that where such special provisions were silent the procedure was governed by the general provisions of the charter relating to elections. (2) That

the special election was held in pursuance of these special provisions, supplemented by the general provisions where necessary. (3) That the provisions of the charter of the city of Shawnee regulating matters of purely municipal concern prevail over the general laws of the state in conflict with such charter provisions.

Error from District Court, Pottawatomie County; Hal Johnson, Judge.

Mandamus by the state on the relation of J. H. Scott and another against F. W. Watts, mayor of the city of Shawnee. Judgment for plaintiffs, and defendants bring error. Affirmed.

I. C. Saunders, for plaintiff in error.

Wyatt & Waldrep, for defendant in error.

KANE, J. This was an action commenced by the defendants in error, plaintiffs below, against the plaintiff in error, defendant below, praying for the issuance of a writ of mandamus to compel the defendant, as mayor, to properly sign and execute a certain issue of municipal bonds voted by the tax paying voters of the city for the purpose of building an addition to the General Hospital of the city of Shawnee.

Upon trial to the court the writ of mandamus was granted as prayed for, and this proceeding in error was commenced for the purpose of reviewing the action of the trial court.

Hereafter, for convenience, the parties will be called "plaintiffs" and "defendant," respectively, as they appeared in the trial court.

It is conceded that the General Hospital in question has been owned, operated, and controlled exclusively by the city of Shawnee ever since its construction, and that the proposed addition thereto will also be owned, operated, and controlled by the city, and that the bond issue was approved by a substantial majority of the tax-paying property owners of the city.

The grounds upon which the mayor refused to sign and execute the bond issue as required by law and upon which he relies for reversal, are stated by his counsel in his brief as follows:

First. "It is our contention that the ordinance authorizing the calling of the special bond election for July 9, 1918, for the voting of bonds should have been published ten consecutive days in the official newspaper of said city, each day, and that the publishing of said ordinance for five consecutive days, each day, is not a compliance with the charter governing elections."

Second. "It is the further contention of

the plaintiff in error, defendant below, that said special election is void for the reason that said notice is insufficient, in that it does not specify the polling places in the several wards and precincts of the city or designate the officers who are to conduct said election, neither does it specify the exact rate of interest the bonds shall bear, and the property tax-paying electors could not be sufficiently informed as to the holding of said special election."

These contentions are based upon the assumption that certain general sections of the charter of the city in relation to holding elections are applicable to the special election held herein. On the other hand, counsel for the plaintiffs concede that these general provisions were not followed in their entirety, but they say that the charter of the city of Shawnee contains special and specific provisions relating to the issuance of bonds of the character herein involved, which specifically prescribe the length of time the ordinance shall be published, the manner of calling the election for voting such bonds, and the kind and character of notice to be given, including the length of time of publication of the same, and that in calling the special election herein the entire proceedings had in connection with the issuance of the bonds were strictly in pursuance of these special provisions of the charter, in so far as the same purport to regulate such matters, and that where such special provisions were silent on the question of procedure, the general provisions of the charter relating to elections, as contended in the brief of counsel for the defendant, were followed.

As there seems to be no dispute between counsel that the election was held and the bonds issued in strict accordance with these special provisions of the charter, as supplemented by the general provisions where the special provisions were silent, the decision on the foregoing grounds for reversal turns wholly on the question which of these provisions are controlling.

It is quite clear to us that the special provisions especially applicable to the matter of holding special elections for the issuance of municipal bonds for public utilities to be owned and operated by the city, must be held to be controlling.

The rule is that where there are two provisions of a city charter, one of which is special and particular and clearly includes the matter in controversy, and where the special provision covering the subject prescribes different rules and procedure from those in the general provision, it will be held that the special provision applies to the subject-matter and that the general provision does not apply. Gardner v. School District No. 87, Kay County, 34 Okla. 716, 126 Pac. 1018.

As the special provision of the charter, which we hold to be applicable (section 19 of article 15), provides that such ordinance shall be published daily for at least five days in the official newspaper, etc., and there was a publication of the ordinance daily for five full days before the date of the special election, the first ground for reversal must be denied.

Section 5, article 17, of the charter provides:

"The council shall have power to submit to the electors of said city, at any election, any question required to be so submitted by the Constitution, the law, this charter, or by ordinance; provided, that in case such question is required by said Constitution, law, charter, or ordinance, to be submitted at a special or other particular kind of election, it shall be so submitted."

The special provisions of the charter do not contain a provision requiring the notice to specify the polling places, in each ward of the city, or to designate the officials who are to conduct such election. Inasmuch as such special provisions were silent on these points, the general provisions of the charter relating to elections were followed.

Section 11, article 17, of the charter provides that the ordinance calling the election shall contain the designation of the polling places and the names of the inspector and the judges who are to conduct such election. This provision was followed in the ordinance calling such special election. That the issuance of these bonds for the purpose above set out was a matter of purely municipal concern, and therefore regulated by the city charter, there can be no doubt.

In the case of Rogers v. Bass & Harbour Co., 64 Oklahoma, 168 Pac. 212, it was held that:

"The provisions of the charter of the city of Muskogee, in so far as they regulate the method of levying and collecting taxes for purely municipal purposes, prevail over the general laws of the state in reference thereto, in so far as said general laws are in conflict therewith."

In the case of State v. Linn, 49 Okla. 526, 153 Pac. 826, the same rule is stated as follows:

"The provisions of the charter of the city of Tulsa, adopted under the authority of section 3a, art. 18, of the Constitution (329 Williams' Const. Ann.), and section 539, Rev. Laws 1910, supersede all laws of this state in conflict with such charter provisions, in so far as such laws relate to merely municipal matters."

To the same effect is City of Collinsville v. Wards, 64 Oklahoma, 165 Pac. 1145. The latest expression of the court on this question may be found in the case of Ledegar v. Bockoven, 77 Oklahoma, 185 Pac. 1097, where previous decisions are reviewed and harmonized.

As the election seems to have been held and bonds issued substantially in compliance with the special provisions of the charter, supplemented by the general provisions where necessary, the judgment of the court below must be affirmed.

RAINEY, V. C. J., and JOHNSON, PITCH-FORD, HIGGINS. BAILEY, and McNEILL, JJ.. concur.